# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER T. DOWNS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CAROLYN W. COLVIN, acting** | ) | **Cause No. 1:13-cv-00843-WTL-DKL** |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Christopher T. Downs requests judicial review of the final decision of the Defendant denying Mr. Downs' application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

## I. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is

not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step

two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his

ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step

three, the Commissioner determines whether the claimant's impairment or combination of

impairments meets or medically equals any impairment that appears in the Listing of

Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-

month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At

step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. §

404.1520(f). At step five, if the claimant can perform any other work in the national economy,

he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be

upheld by this court "so long as substantial evidence supports them and no error of law

occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence

means such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion," *id.*, and this court may not reweigh the evidence or substitute its judgment for that

of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to

articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific

evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be

affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not

required to address every piece of evidence or testimony," she must "provide some glimpse into

---

[1] The Code of Federal Regulations contains separate sections relating to DIB and SSI that
are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains
citations to DIB sections only.

her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176.

## II.     BACKGROUND

Christopher Downs filed for SSI and DIB on December 29, 2008, alleging he became disabled on January 1, 1996.  In his application for benefits, Mr. Downs alleged that he was disabled because of chronic back pain, ADHD, and depression.  Mr. Downs' application was denied initially on March 16, 2009, and again upon reconsideration on May 12, 2009.  Following the denial upon reconsideration, Mr. Downs requested and received a hearing before an Administrative Law Judge ("ALJ").  A video hearing, during which Mr. Downs was represented by counsel, was held by ALJ Janice M. Bruning on March 14, 2011.  The ALJ presided over the hearing from Oak Brook, Illinois.  Mr. Downs appeared in Indianapolis, Indiana.  The ALJ issued her decision denying Mr. Downs' claim on June 14, 2011.

The Appeals Council denied Mr. Downs' request for review on April 30, 2013, thereby rendering the ALJ's decision the final decision of the Commissioner and subject to judicial review.

*Medical Evidence*

Mr. Downs' medical evidence begins on October 26, 2004, when an MRI of the lumbar spine was performed.  It showed early changes of disc dessication in one part of the spine and mild facet degenerative changes, ligamentum flavum thickening, and a minimal disc bulge in another part of the spine.

On January 10, 2005, Mr. Downs went to Wagoner Medical Center with complaints of depression.  He was diagnosed with depression, an adjustment disorder, gastroesophageal reflux disease, and low back pain.  He was prescribed Prozac.  At this exam, his weight was 244.8

pounds.  On February 21, 2005, he again was diagnosed with depression.  At this exam, his weight was 249.4 pounds.  On June 26, 2007, lumbosacral x-rays showed scoliosis and evidence of facet joint arthritis.

Between June 25, 2007, and November 27, 2007, Mr. Downs went to Wagoner Medical Center approximately once every four to six weeks with complaints of low back pain and asthma.  It was noted that his height was 74 inches and his weight ranged between 246.9 and 256 pounds.  He was diagnosed with asthma/COPD, acute low back pain, and lumbago.  Following a pulmonary function test, Dr. Marius Nefliu concluded that Mr. Downs had mild to moderate obstructive respiratory defect and hyperinflation.

On January 3, 2008, Mr. Downs went to the emergency room with moderate to severe pain in his right elbow.  He was found to have tenderness, swelling, and limited active range of motion in the upper extremity and was diagnosed with right elbow bursitis.

Between January 2008 and January 2009, Mr. Downs went to Wagoner Medical Center once a month for medication refills and complaints of low back pain.  At these visits, his weight ranged between 245.8 and 260.8 pounds.  From January through July 2008, his diagnoses included lumbago, chronic low back pain, COPD, asthma, spondylosis, and degenerative disc disease of the lumbar spine.  He was also found to have muscle spasms in his back.  Between September 2008 and January 2009, all but one of Mr. Downs' exams showed a decreased range of motion due to low back pain and paravertebral muscle spasms.  In January 2009, he was diagnosed with restrictive airway disease.

On April 4, 2008, Mr. Downs reported decreased energy and motivation and lack of sleep.  On May 7, 2008, Mr. Downs underwent a psychological evaluation with Dr. Paul J. Martin, PhD.  He reported decreased energy, sleep onset insomnia, and a weight problem.  It was

noted that he appeared to be substantially overweight. He showed signs of tension, anxiety, and lack of attention and concentration. Dr. Martin diagnosed ADHD, predominantly inattentive type. He also noted that Mr. Downs "displayed no unusual pain or discomfort." R. at 416.

On February 11, 2009, Mr. Downs underwent a psychological evaluation with Dr. Jean M. Badry, PhD, a State Agency doctor. She noted that he was able to remain seated for the two-and-a-half-hour interview and test. She noted that he did not have problems with inattentiveness or memory impairment. She also noted that it would be unusual for someone with mild scoliosis to be as impaired as Mr. Downs claimed to be. *Id.* at 356-59.

Between February 2009 and April 2009, Mr. Downs continued to go to Wagoner Medical Center once a month. His diagnoses included chronic pain, chronic low back pain, degenerative disc disease of the lumbar spine and restrictive airway disease. He had a decreased range of motion in the lumbar spine and muscle spasms. During these months, his weight ranged between 248.5 and 250.3 pounds.

On February 5, 2009, Mr. Downs had a consultative examination with Dr. Duan Pierce. He reported problems with memory and concentration, an occasional cough, shortness of breath with overexertion, occasional chest pain with stress, and weight loss. His height was recorded as 71.5 inches and his weight as 256 pounds. It was noted that he was obese. Dr. Pierce stated that Mr. Downs had lumbar spine pain and could not stand for more than three hours or lift more than fifteen pounds. He stated that Mr. Downs "may be able to resume working normally after completing physical therapy." *Id.* at 85.

On April 20, 2009, Mr. Downs underwent a physical therapy back evaluation. Mr. Downs had moderate to severe tenderness to palpation on his central spine, and his range of motion was decreased bilaterally with side bending and rotation. Manual traction increased pain.

On May 12, 2009, Dr. J. Sands, a State Agency doctor, completed a physical Residual Functional Capacity ("RFC") assessment. He diagnosed Mr. Downs with COPD. He noted Mr. Downs' body mass index of 35.2. He stated that Mr. Downs could occasionally lift twenty pounds, frequently lift ten pounds, stand at least two hours a day, and sit about six hours a day.

On July 4, 2010, x-rays of Mr. Downs' right hand showed a fracture with associated soft tissue swelling. On March 15, 2011, an MRI of the lumbar spine showed minimal disc dessication with slight loss of disc height and mild circumferential disc bulging.

*Hearing Testimony*

At the hearing, Mr. Downs testified that he was unable to work because of his chronic pain. He had not worked since 2006. He testified that he lived with his fiancé. He had four children and his fiancé was pregnant at the time. His children did not live with him all of the time, but he saw them on weekends. He was 73 to 73.5 inches tall and weighed about 230 pounds. Mr. Downs testified that he took Tramadol and Flexeril, but they did not alleviate his pain. He said that he once tried physical therapy, but it made his back worse. He said he could walk about three blocks before needing to rest and could stand about ten minutes before needing to sit down. He said he could take care of himself, but it hurt to do so. He did not leave the house unless it was a necessity.

After Mr. Downs concluded his testimony, the ALJ heard testimony from the Vocational Expert ("VE"), Aimee Mowery. The ALJ asked the VE to consider a hypothetical individual with Mr. Downs' age, education, and work experience who could work with the following restrictions: lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six out of eight hours; sit for a total of six out of eight hours; never climb ladders, ropes, or scaffolding; occasionally climb ramps and stairs, balance, stoop, crouch, kneel,

and crawl; not be near humidity, temperature extremes, and lung irritants; and perform three to four step simple, repetitive routine tasks. The VE testified that such an individual could perform work as a ticket taker, mail order clerk, and a hand packager.

## III.    DISCUSSION

In his brief in support of his request for judicial review, Mr. Downs presents two issues for the Court's review. First, he argues that the ALJ failed to consider Mr. Downs' obesity. Second, he argues that the ALJ's credibility analysis is inadequate because the ALJ failed to consider all of the appropriate factors when assessing Mr. Downs' credibility. The Court will address his arguments, in turn, below.

### A.  The ALJ's Consideration of Obesity

Mr. Downs argues that the ALJ committed an error in not considering his obesity because the ALJ did not mention it in her decision, despite evidence of it in the record. Mr. Downs argues that the omission violated Social Security Ruling ("SSR") 02-01p, which notes that ALJs should consider the impact of obesity because "[o]besity can cause limitation of function" and "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." SSR 02-01p. The Court believes, however, that the omission in this case was harmless.

When an ALJ relies on medical records that note the claimant's height and weight but does not mention obesity in her decision, the error is harmless. *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (noting that "the references to [the claimant's] weight in his medical records were likely to alert the ALJ to the impairment"). Here, the ALJ considered Mr. Downs' obesity by relying on medical records that included information about his height and weight. Dr. Pierce noted his obesity and

Dr. Sands, the State Agency physician, noted his BMI of 35.2. The ALJ was thorough in her review of the record and in relying on these opinions, took into account Mr. Downs' obesity.

Further, an ALJ's failure to mention the claimant's obesity is harmless when no medical opinion identifies the claimant's obesity as "significantly aggravating . . . or contributing to [his] physical limitations," and the claimant "fails to point to any other evidence suggesting how [his] obesity further impaired [his] ability to work." *Prochaska*, 454 F.3d at 737. Neither Dr. Pierce nor Dr. Sands, who both noted Mr. Downs' obesity, nor any other examining doctor identified Mr. Downs' obesity as contributing to his impairments or limiting his functional abilities. Mr. Downs did not identify obesity in his application as an illness or condition that limited his ability to work, R. at 197, and he did not mention it at his hearing. While he repeatedly sought treatment for his chronic back pain, the medical records show that he did not seek treatment for his obesity. He reported a weight problem only once during a psychological evaluation with Dr. Martin. *Id*. at 415. Now for the first time, Mr. Downs asserts his obesity is a problem, but he fails to show his obesity has an impact on his impairments or on his ability to work. Because "any remand for explicit consideration of [Mr. Downs'] obesity would not affect the outcome of this case," *Skarbek*, 390 F.3d at 504, the ALJ's omission is harmless.

### B. The ALJ's Credibility Analysis

Mr. Downs next argues that the ALJ erred in assessing his credibility. In examining credibility determinations, the Court will not overturn the ALJ's conclusions "unless they were patently wrong." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, "[t]he determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing

body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)).

Mr. Downs specifically argues that the ALJ:  1) ignored the side effects of his medications; 2) failed to mention that he used a heating pad to alleviate his pain; and 3) failed to mention that when he performs his activities of daily life, he experiences pain.  The Court does not agree with Mr. Downs that these alleged failures warrant remand.

First, the ALJ did specifically note that Tramadol and Flexeril cause Mr. Downs to experience sleepiness, R. at 23, and also noted that "[a]ny and all activities hurt [Mr. Downs'] back." *Id*.  The ALJ did not, therefore, ignore this evidence.  Further, it is true that the ALJ did not mention Mr. Downs' use of a heating pad; however, it is unclear to the Court how that fact is relevant to the ALJ's credibility determination.  While SSR 96-7p lists a number of factors that the ALJ must consider in determining the credibility of a claimant including, among others, the side effects of medications and other pain-alleviating measures a claimant may use, an ALJ is under no obligation to cite to every piece of evidence in the record. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("[A]n ALJ does not need to discuss every piece of evidence in the record, [but] . . . may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it.").

In his brief, Mr. Downs does not explain to the Court how these alleged failures affected his credibility determination. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) ("[I]in Schomas's brief to the district court, he . . . cit[ed] generally to SSR 96–7, [but did not explain] how the corresponding evidence would support his argument.").  Rather he argues that his case "must be remanded so a proper credibility analysis can be performed and the side effects of his medication and his use of a heating pad can be considered." Pl.'s Br. at 18-19.  The Court does

not agree. The ALJ built a logical bridge between the evidence and her conclusion, and the Court is satisfied with the reasoning behind her credibility determination.

## IV. CONCLUSION

The ALJ in this case satisfied her obligation to articulate the reasons for her decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 06/04/2014

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication